NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
MICHAEL D. BARNEY,                     :
                                       :
         Plaintiff,                    :    Hon. Joseph H. Rodriguez
                                       :
    v.                                 :    Civil Action No. 08-4115
                                       :
CAMDEN COUNTY                          :
BOARD OF CHOSEN                        :    **ORDER & OPINION**
FREEHOLDERS AND THE                    :
COUNTY OF CAMDEN,                      :
                                       :
         Defendants.                   :
_____

**RODRIGUEZ**, Senior District Judge:

This matter comes before the Court on cross motions for summary judgment filed by Plaintiff, Michael D. Barney and Defendants.[1] Plaintiff filed this action on behalf of a statewide class of persons similarly situated and defined as:

> [I]ndividuals who have been incarcerated in the Camden County Jail who were charged and/or paid the User Fee authorized by the Camden County Board of Chosen Freeholders Resolution #23 from September 28, 1995 through the date of class certification.[2]

Plaintiff alleges that the Resolution enacted by the Camden County Board of Chosen Freeholders and implemented in the Camden County Correctional Facility imposing a $5 daily user fee on inmates and pretrial detainees constitutes an unlawful and

---

[1] This Court has jurisdiction pursuant to 28 U.S.C. § 1331 over Plaintiff's 42 U.S.C. § 1983 claim for violation of his federal constitutional rights. The court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

[2] No request for class certification has been made by the Plaintiff.

1

unauthorized municipal act, and that the policy violates his rights under the Fourteenth Amendment of the United States and New Jersey Constitutions. Finally, Plaintiff argues that the policy of charging all inmates $35 upon entry to the facility, regardless of the length of their stay, is an impermissible application of the enabling ordinance. Oral argument was heard on the motion on October 15, 2009. For the reasons expressed on the record that day, as well as those set forth below, Plaintiff's motion [Doc. No. 8] is DENIED and Defendants' cross-motion for summary judgment [Doc. No. 11] is GRANTED.

## I.  BACKGROUND

On or about September 13, 2006, Plaintiff was arrested and committed to the Camden County Correctional Facility as a pretrial detainee. (Pl.'s Statement of Undisputed Material Facts at ¶ 10.) Mr. Barney was released later the same day after posting the requisite bail. (Id. at ¶ 12.) Despite the fact that Mr. Barney was held in the prison for less than one day, pursuant to prison policy, Mr. Barney was required to execute a "User Fee Waiver" and was charged a $35 initial "user fee." (Id. at ¶¶ 11, 14.) Seven dollars were taken from Mr. Barney by prison officials, and a $28 balance remains on his account. (Id. at ¶ 15.)

These actions were taken pursuant to the user fee policy authorized by the Camden County Board of Chosen Freeholders, Resolution #23. The user fee is a per diem assessment collected from county prisoners to help off-set housing costs in the prison. It is the policy of the Camden County Correctional Facility to assess county prisoners an initial fee of $35 upon entry to the facility, with a $5 per day fee beginning to accrue on the eighth day of inmates' incarceration.

A. The User Fee

Between January 1, 2001 and January 22, 2009, the County has collected $3,525,224.84 in user fees from county prisoners. (Pl.'s Ex. K.) Camden County prisoners pay a $5 per day fee for the length of their stay; however, it is the policy of the Camden County Correctional Facility to assess a $35 flat fee upon entry to the facility regardless of the length of the inmate's incarceration based on an average seven-day stay. (Pl. Ex. I.) When a prisoner lacks sufficient funds to pay the fee, a negative account balance is created. If any debt remains unpaid upon an inmate's release from jail, the debt is kept on the prisoner's record and in the event he/she returns to jail, the open negative balance is applied to the new account.

Upon entry to the correctional facility inmates receive and sign a waiver explaining in part that upon entrance to the facility an account will be established on the inmate's behalf and that money in the inmate's possession will be placed in that account. The waiver explains that a debit will be made in the amount of $35 and that once a positive balance is reached, money in the account may be used for commissary purposes. The waiver further warns inmates that they have sixty days after release to make arrangements to pay the outstanding balance before the matter is turned over to a collection agency. (Id.)

B. Resolution #23

Resolution #23, enacted September 28, 1995 by the Board of Chosen Freeholders, authorizes county officials to institute a user fee reimbursement system for those sentenced to imprisonment or ordered to pretrial or investigative detention in the County Correctional Facility. (Pl.'s Ex. A.) The Board authorized the user fee in the amount of

$5 per day. The Resolution states that, "The Camden County Board of Chosen Freeholders is committed to the concept of assessing, where feasible, user-fees to those individuals who avail themselves of services or facilities not uniformly used by Camden County residents..." (Id.) The user fee is meant to defray some of the costs of incarceration "while at the same time avoiding the assessment of a penalty or punishment..." (Id.) Any inability to pay the user fee may not be considered by the Correctional Facility with regard to determining whether to provide or allow access to any services at the facility and may not be deemed to constitute a condition of release. (Id.)

Resolution #23 was implemented by the Camden County Department of Corrections pursuant to the Warden's General Orders adopted December 26, 1995, revised June 7, 2002. (Pl.'s Ex. B.) However, not all prisoners fall within the scope of Resolution #23. Inmates being held for Federal Authorities are not required to pay the user fee, and State inmates pay a maximum of $75 regardless of the length of their stay. (Pl.'s Ex. C.)

Other correctional facilities in the state of New Jersey impose similar fees on inmates. Attached to their Motion for Summary Judgment, Defendants submitted a memorandum summarizing the user fee/processing fee policy of the other twenty County facilities in the state. (Def.'s Ex. C.) Fourteen facilities charge inmates a user fee or processing fee, while six of the facilities charge no fee at all. However, only Atlantic County and Camden County charge a recurring fee, while the remaining thirteen charge what appears to be a one-time fee. Those fees range from $25-$100, paid either upon entrance to, or exit from the facility. Atlantic County charges inmates a $50 per month

user fee.

Both parties filed a motion for summary judgment arguing that there is no genuine issue of material fact in regards to the legality and constitutionality of the user fee policy.

## II. SUMMARY JUDGMENT STANDARD

"Summary judgment is proper if there is no genuine issue of material fact and if, viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law." Pearson v. Component Tech. Corp., 247 F.3d 471, 482 n.1 (3d Cir. 2001) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)); accord Fed. R. Civ. P. 56 (c).  Thus, this Court will enter summary judgment only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (c).

An issue is "genuine" if supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit.  Id.  In determining whether a genuine issue of material fact exists, the court must view the facts and all reasonable inferences drawn from those facts in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once the moving party has met this burden, the nonmoving party must identify, by affidavits

or otherwise, specific facts showing that there is a genuine issue for trial.  Id.; Maidenbaum v. Bally's Park Place, Inc., 870 F. Supp. 1254, 1258 (D.N.J. 1994).  Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party.  Andersen, 477 U.S. at 256-57.  "A nonmoving party may not 'rest upon mere allegations, general denials or . . . vague statements . . . .'" Trap Rock Indus., Inc. v. Local 825, Int'l Union of Operating Eng'rs, 982 F.2d 884, 890 (3d Cir. 1992) (quoting Quiroga v. Hasbro, Inc., 934 F.2d 497, 500 (3d Cir. 1991)).  Indeed,

> the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

Celotex, 477 U.S. at 322.

In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  Credibility determinations are the province of the factfinder.  Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

### III. ANALYSIS

Plaintiff challenges the Camden County User Fee policy pursuant to 42 U.S.C. § 1983 and the New Jersey Civil Rights Act, NJ STAT. ANN. § 10:6-1, seeking damages and injunctive relief.  Plaintiff argues that Camden County does not have the authority to assess a user fee on inmates without affirmative authority to enact such a policy by the New Jersey Legislature.  The Plaintiff further asserts that the fee is a punitive surcharge,

and that application of the user fee policy violates constitutional rights to due process and equal protection under the New Jersey and United States Constitutions. Finally, Plaintiff contends that the $35 initial assessment by the Camden Correctional Facility constitutes an ultra vires illegal act that exceeds the scope of the enabling resolution.

Defendants take the position that absent a specific law or regulation to the contrary, the County is free to enact such resolutions under its broad authority regarding the custodial maintenance of inmates. Furthermore, Defendants argue that the user fee assessed by Camden County Correctional Facility is a non-punitive, nominal charge that falls squarely within the county's constitutional authority to enact Resolutions.

## A. Legislative Authorization

N.J. STAT. ANN. § 40:48-2 provides:

> Any municipality may make, amend, repeal and enforce such other ordinances, regulations, rules and by-laws not contrary to the laws of this state or of the United States, as it may deem necessary and proper for the good government, order and protection of persons and property, and for the preservation of the public health, safety and welfare of the municipality and its inhabitants, and as may be necessary to carry into effect the powers and duties conferred and imposed by this subtitle, or by any law.

Construed liberally in favor of local government as the New Jersey Constitution requires,[3] "this provision has been held to accomplish a broad grant of police power in addition, rather than merely ancillary, to the sundry detailed authorizations for municipal action contained in [New Jersey's] statutes." Summer v. Teaneck, 53 N.J. 548, 552, 251 A.2d 761 (1969).

---

[3] "The provisions of this Constitution and of any law concerning municipal corporations formed for local government, or concerning counties, shall be liberally construed in their favor." N.J. CONST. art. IV § 7 (11).

7

Nonetheless, a municipal policy is unlawful if it permits or requires that which a statute expressly forbids or authorizes. This follows from the basic principle that local governments may not contradict Legislative policy. The New Jersey Legislature has enacted no statute condoning or condemning a user fee in the county prisons. However, even absent a direct conflict, a municipality may be unable to exercise power if the Legislature has preempted the field. Id. at 554. Preemption is a judicially created principle based on the proposition that a municipality, which is an agent of the State, cannot act contrary to State law. However for the doctrine of preemption to apply, "an intent to occupy the field" must appear clearly. Id. (citing Kennedy v. City of Newark, 29 N.J. 178, 187, 148 A.2d 473 (1959)). Preemption analysis calls for the answer initially to whether a statute expressly forbids or authorizes a policy or regulation. Absent an express legislative mandate, as is the case here, a state legislative scheme will only preempt a local policy if the Legislature clearly intended to prevent municipalities from regulating local aspects otherwise within their control. Summer, 53 N.J. at 554-55.

The Constitution of the State of New Jersey provides that the powers of counties "shall include not only those granted in express terms but also those of necessary or fair implication, or incident to the powers expressly conferred, or essential thereto, and not inconsistent with or prohibited by this Constitution or by law." N.J. CONST. art. IV § 7 (11). While the New Jersey Legislature did not expressly provide for or prohibit a user fee, the Court concludes that the power to enact the user fee is "incident to the powers expressly conferred" to the County.

N.J. STAT. ANN. § 30:8-19 states, "[i]t shall be lawful for the board of chosen freeholders of any county in this state to assume and thereafter to exercise the custody,

8

rule, keeping and charge of the county jails in their respective counties, and of the prisoners therein . . ." Furthermore, N.J. STAT. ANN § 30:8-23 states,

> When the board of chosen freeholders of any county shall have assumed the custody, rule, keeping and charge of the county jail of such county pursuant to section 30:8-19 of this title, such board shall prescribe rules and regulations for the management and conduct of such jail, and the employment, maintenance and keeping of the prisoners therein. . .

The Third Circuit considered a similar challenge in Tillman v. Lebanon County Correctional Facility, 221 F.3d 410 (3d Cir. 2000). The plaintiff in Tillman challenged the legality and constitutionality of a $10 per day fee for housing costs imposed on prisoners in the Lebanon County prison. That plaintiff also complained that the prison lacked the authority to implement a Cost Recovery Program; however, the Third Circuit held that the County was vested with the power to govern and manage correctional institutions, which included the power to impose a housing fee. Id. at 423. The Tillman court stated, "[a]lthough we have not uncovered a statute explicitly providing for the deductions at issue here, the Cost Recovery Program was duly promulgated, not by the state, but by the county prison board, which has "exclusive" authority regarding "the government and management" of the facility." Id. (citing 61 PA. CONS. STAT. § 408(a)(1)) (current version at 61 PA. CONS. STAT. ANN. § 1731). That statute states in part that, "[t]he board . . . shall provide for the safekeeping, discipline and employment of inmates and the government and management of the correctional institution." 61 PA. CONS. STAT. ANN. § 1731 (a)(3).

Furthermore, the Third Circuit highlighted other court decisions that upheld similar policies finding no "barriers to the promulgation of such programs by prisons." Tillman, 221 F.3d at 423 (citing Reynolds v. Wagner, 128 F.3d 166, 170, 183 (3d Cir.

1997) (upholding program that was created by county prison); Mastrian v. Schoen, 725 F.2d 1164, 1165-66 (8th Cir. 1984) (upholding programs instituted by correctional officials). Accordingly the Third Circuit held that the Lebanon County Prison Board had the authority to promulgate the Cost Recovery Program.

Despite the broad authority granted to the Board of Chosen Freeholders by the New Jersey Legislature under Sections 30:8-19 and 30:8-23, as well as the Tillman court's decision to permit the Lebanon County Correctional Facility to charge inmates a housing fee based on similar legislative authority as is presented here, Plaintiff nevertheless argues that the Board exceeded its authority when it enacted the User Fee Resolution in Camden County. Plaintiff contends that Defendants cannot satisfy the final element of the Constitutional analysis, requiring that the County show that the user fee is "not inconsistent with or prohibited by . . . law." N.J. CONST. art. IV § 7 (11). Plaintiff acknowledges that the care and control of prisoners has been delegated to the County, but argues that what is at issue is whether the County can pass on part of the cost of incarceration to the inmates themselves. Plaintiff asserts that a review of (1) The Department of Corrections Act, N.J. STAT. ANN. § 30:1B-3 ,[4] (2) The New Jersey Code of

---

[4] The Department of Corrections Act of 1976 established the New Jersey Department of Corrections as the State agency charged with the duty to supervise . . . persons in local correctional and detention facilities. . ." N.J. STAT. ANN. § 30:1B-3 . The Commissioner for the Department of Corrections has the authority to determine policy for the institutions and non-institutional agencies within his jurisdiction. N.J. STAT. ANN. § 30:1B-5(b). Pursuant to legislative authority, the Commissioner has indeed promulgated extensive rules governing the programs, services, care, treatment, and discipline of adult inmates incarcerated in county correctional facilities. See N.J. ADMIN. CODE § 10A:31-1.1. to 29.4. Plaintiff contends that because there is no direct provision in the administrative code permitting an inmate to be charged a user fee, the county is required to have the fee approved by the Commissioner pursuant to N.J. STAT. ANN. § 10A:31-1.5, which states in part:
> (a) Pursuant to N.J.S.A. 30:1B-10, the Commissioner of the Department of Corrections is authorized to establish minimum standards for adult county correctional facilities.
> (b) The Commissioner is authorized to determine matters related to rules establishing the minimum standards regarding the administration of adult county correctional facilities

Criminal Justice, N.J. STAT. ANN. § 2C:1-5 (d),[5] and (3) The Inmate Healthcare Act, N.J. STAT. ANN. § 30:7E-2,[6] reflects the State's intention to "occupy the field" of prison policy and create uniform statewide regulation of jails.

Plaintiff asserts a preemption by exclusion argument. Essentially the plaintiff argues that the omission of a user fee provision within the Department of Corrections Act and the New Jersey Code of Criminal Justice evidences legislative intent to prohibit county correctional facilities from offsetting the cost of incarceration by collecting a fee

---

and to modify rules so that such rules can function effectively.

There is a distinction between words of permission and that which is mandatory. The Court does not agree that this provision grants the Department of Corrections supervisory authority over every policy decision made by the freeholders not referenced specifically in the Administrative Code.

[5] Criminal penalties are regulated by the Code of Criminal Justice. N.J. STAT. ANN. § 2C:1-5 (d) reflects a general legislative intent to exclude local legislation governing areas covered by the Code of Criminal Justice. That provision states: "Notwithstanding any other provision of law, the local governmental units of this State may neither enact nor enforce any ordinance or other local law or regulation conflicting with, or preempted by, any provision of this code or with any policy of this State expressed by this code, whether that policy be expressed by inclusion of a provision in the code or by exclusion of that subject from the code."
    Plaintiff argues that the regulation of penal institutions has been preempted and consolidated by the Code of Criminal Justice and that the County was not authorized to charge a user fee as an additional punishment of inmates incarcerated in the County. The court rejects Plaintiff's argument for preemption by exclusion, as the user fee does not constitute a penalty. The Third Circuit has clearly announced that daily assessments like the one at issue here, do not constitute a penalty, and that a cost recovery program is more properly understood as a transfer of funds than a way to regulate prison behavior or as a punitive measure. Tillman v. Lebanon County Correctional Facility. 221 F.3d 410 (3d Cir. 2000). The Tillman court reasoned that: "A prisoner's term of incarceration cannot be extended, nor can he be reincarcerated, for failure to pay a negative balance . . . the fees can hardly be called fines when they merely represent partial reimbursement of the prisoner's daily cost of maintenance, something he or she would be expected to pay on the outside." Id. at 420.
    This Court recognizes that the Tillman court reviewed the legality of that prisoner fee policy under the framework designed for Eighth Amendment excessive fine violations. However, the Third Circuit's reasoning and conclusions persuade this court that just as the nominal user fee there did not constitute an (excessive) fine, the user fee here cannot be considered a penalty. Just as in Tillman, here, failure to pay the user fee has no penal consequences. A prisoner's term of incarceration is not extended, he or she may not be denied services while imprisoned for failure to pay the user fee, and a prisoner may not be reincarcerated for failure to pay the fee. The user fee is a non-punitive charge that does not implicate the New Jersey Code of Criminal Justice.

[6] The court rejects the argument that just because the Legislature authorized the State and Counties to seek reimbursement of health care costs from inmates, the Legislature must also grant the County the power to impose a user fee. These two fee policies are entirely distinguishable.

11

from inmates.  Plaintiff seeks support for that assertion based on the Inmate Healthcare Act in which the Legislatures authorized facilities to seek reimbursement from inmates for health care costs.  In addition, Plaintiff argues that the New Jersey Legislature's failure to enact proposed legislation permitting counties to charge prisoners a user fee, reveals Legislative intent to prohibit such fees. (Pl.'s Ex.s L-W).

None of the statutes cited by the plaintiff are in conflict with the user fee resolution, nor do any of these statutes convey a clear and manifest intent to completely occupy the field of prison regulation so as to foreclose a municipality's local policy. Furthermore, the plaintiff's suggestion that the failure of the New Jersey Legislature to enact proposed bills concerning liability of inmates for the costs associated with their incarceration does not evidence a legislative intent that user fees are unlawful. "Legislative inaction has been called a 'weak reed upon which to lean' and a 'poor beacon to follow' in construing a statute." G.E. Solid State, Inc. v. Director, Div. of Taxation, 132 N.J. 298, 313, 625 A.2d 468 (1993) (citations omitted); Amerada Hess Corp. v. Director, Div. of Taxation, 107 N.J. 307, 322, 526 A.2d 1029 (1987) (citations omitted), *aff'd*, 490 U.S. 66 (1989).  In the absence of Legislative history it is impossible to accurately speculate as to the meaning that should be ascribed to such Legislative inaction; therefore, the Court accords no legal significance to this failure to enact a statute authorizing user fees.

While the New Jersey Legislature did not expressly provide for or prohibit a user fee, the Court concludes that the there is not sufficient evidence of legislative intent indicating that user fees are prohibited.  The absence of a user fee statute does not indicate that the Legislature consciously decided to prohibit municipalities from enacting

12

such policies. Because the New Jersey Legislature expressly granted broad authority to the Board of Chosen Freeholders to "prescribe rules and regulations for the management and conduct [of county correctional facilities]," N.J. STAT. ANN § 30:8-23, the Court rejects Plaintiff's argument that Resolution #23 constitutes an ultra vires illegal action by the Camden Board of Chosen Freeholders.

### B. Constitutionality of the User Fee

Plaintiff contends that the user fee offends the federal due process and equal protection guarantees as well as their New Jersey constitutional counterparts.[7] Plaintiff alleges that he suffered a denial of due process rights when the County, as a matter of established policy, seized funds to satisfy the user fee charges. While Plaintiff does not contest that he was provided with adequate notice of the policy in the Inmate Handbook and the User Fee Waiver, he argues that failure to provide a pre-deprivation hearing or any opportunity to grieve prior to the deduction of funds from his inmate account violated his procedural due process rights. Plaintiff also argues that the policy offends the Equal Protection Clause because Camden County charges a daily user fee, while other counties charge either a one-time fee or no fee at all. Plaintiff further asserts that the fact that only County prisoners in the Camden Correctional facility are required to pay $5 per day, while Federal and State prisoners are not required to pay the same fee, offends the Equal Protection Clause.

*1. Due Process*

---

[7] The Fourteenth Amendment's guarantees of due process and equal protection are equatable with, respectively, Article I, § 1 and Article I, § 5 of the New Jersey Constitution. The New Jersey constitutional provisions do not track the Fourteenth Amendment's language but they appear to have the same content. See Washington Nat'l Ins. Co. v. Board of Review, 1 N.J. 545, 553, 64 A.2d 443, 446 (1949); Auto-Rite Supply Co. v. Mayor and Township Committeemen, 25 N.J. 188, 135 A.2d 515, 516-17 (1956).

The Fourteenth Amendment prohibits the State from depriving "any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1.  In order to bring a procedural due process claim, a plaintiff must allege that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of life, liberty, or property, and (2) the procedures available to him did not provide due process of law.  Alvin v. Suzuki, 227 F.3d 107, 116 (3d Cir.2000).  The Third Circuit has established that inmates have a property interest in funds held in prison accounts.  Reynolds v. Wagner, 128 F.3d 166, 179 (3d Cir. 1997).  "Thus, inmates are entitled to due process with respect to any deprivation of this money." Id. (citing Mahers v. Halford, 76 F.3d 951, 954 (8th Cir.1996), *cert. denied*, 519 U.S. 1061(1997)).

Therefore, the Court is left to consider the adequacy of the procedural safeguards made available to inmates in the Camden Correctional Facility.  In considering a due process claim, the Court must balance the private interest, the governmental interest, and the value of the available procedure in safeguarding against an erroneous deprivation.  Mathews v. Eldridge, 424 U.S. 319, 335 (1976).  In some cases, takings of property by the State require pre-deprivation notice and a hearing.  But where the State must take quick action, or where it is impractical to provide meaningful pre-deprivation process, due process will be satisfied by a meaningful post-deprivation remedy.  Tillman v. Lebanon County Correctional Facility, 221 F.3d 410, 422 (3d Cir. 2000) (citing Parratt v. Taylor, 451 U.S. 527, 539 (1981)).

Here, inmates are given notice of the User Fee upon entrance to the Correctional Facility through the User Fee Waiver and the Inmate Handbook.  Pursuant to prison policy outlined in the Inmate Handbook, prisoners may challenge the deductions from

14

their inmate accounts through the internal inmate grievance procedure.[8]  The plaintiff contends the post-deprivation hearing afforded is inadequate and the lack of a pre-deprivation hearing is violative of due process guarantees.

In Tillman, the plaintiff also challenged the adequacy of procedural safeguards in place when the prison only provided the opportunity for a post-deprivation hearing.  In that case, the Third Circuit stated that the procedures afforded by the prison satisfied the constitutional requirements of due process.  Specifically, the Tillman court stated that,

> It is impractical to expect the prison to provide predeprivation proceedings under these circumstances. . . . The assessments and takings pursuant to the program involve routine matters of accounting, with a low risk of error. To the extent that mistakes such as erroneous assessments or incorrect takings might occur, they may be corrected through the prison's grievance program without any undue burden on a prisoners' rights. On the other hand, to require predeprivation proceedings for what are essentially ministerial matters would significantly increase transaction costs and essentially frustrate an important purpose of the program, which is to reduce the county's costs of incarcerating prisoners.

Id. at 422.

In addition, the District of New Jersey considered the constitutionality of user fees in Fuentes v. State of N.J. Office of the Public Defenders.[9]  No. 05-3446, 2006 WL 83108 at *1 (D.N.J. Jan. 11, 2006).  In that case, Fuentes, a pretrial detainee at the Atlantic County Correctional Facility challenged the imposition of a user fee of $50 on inmate accounts.  The court found that the fee was a non-punitive nominal fee, and the court

---

[8] While there is no provision specifically permitting the filing of a grievance in regards to the user fee, the handbooks states generally that a grievance may be initiated for an "alleged violation of civil, constitutional or statutory right or policy." (Pl. Ex. D at 11.)

[9] In Fuentes, a pretrial detainee challenged his conditions of confinement in regards to overcrowding, sanitation, noise, seating for meals, lack of nutrition, and low health standards in addition to challenging the user fee policy.  The court dismissed the case in its entirety.

decided that the prison's one-time user fee did not violate any due process rights of the plaintiff.[10] Id. at *8.

Here, the Court finds that the inmate grievance procedure also adequately protects the rights of prisoners without creating an unfair burden on the government. Inmates are afforded adequate notice and the opportunity for hearing as required under the Constitution. The user fee does not violate due process guarantees.

*2. Equal Protection*

The plaintiff challenges the disparate treatment of prisons within the Camden County Correctional facility as well as the disparate treatment of county prisoners across New Jersey. Fifteen of New Jersey's twenty-one counties assess a user fee on inmates (Def.'s Ex. C.) Thirteen counties charge a one-time processing fee, while seven others charge no fee at all. And only Atlantic County also charges a recurring user fee. Furthermore, not all inmates incarcerated in the Camden County Facility pay the user fee. Camden County prisoners pay $5 per day, State inmates pay $5 per day up to $75 maximum, and Federal prisoners held in the county facility pay no fee at all.

A party alleging an equal protection violation has the burden of proving the existence of purposeful discrimination. McClesky v. Kemp, 481 U.S. 279, 292 (1987). Because

---

[10] The Fuentes court relied on the Third Circuit's decision in Myrie v. Commisioner, N.J. Dep't of Corrections. 267 F.3d 251 (3d Cir.2001). In Myrie, the Third Circuit held that the New Jersey statute requiring that inmates pay a 10% surcharge on commissary purchases in order to fund the Violent Crimes Compensation Board (VCCB) was valid. The court held that the surcharge was not so punitive in purpose or effect to constitute "punishment" in violation of the Double Jeopardy Clause, the Ex Post Facto Clause or Bill of Attainder provision of the Constitution. After review of the text and history of the statute, the court held that the New Jersey Legislature intended it to be a civil remedial program, not a program intended to enhance the punishment of persons incarcerated in New Jersey's state and county prisons. Id. at 259.

Plaintiff has not pleaded that he is a member of a suspect class or that a fundamental right has been infringed, the law requires only that the government not treat similarly situated individuals differently without a rational basis. City of New Orleans v. Dukes, 427 U.S. 297, 303(1976). ("Unless a classification trammels fundamental personal rights or is drawn upon inherently suspect distinctions such as race, religion, or alienage, our decisions presume the constitutionality of the statutory discriminations and require only that the classification challenged be rationally related to a legitimate state interest."); Jamieson v. Robinson, 641 F.2d 138, 143 (3d Cir. 1981) (denying equal protection claim where administrators had reasonable justification for offering work-release program at some prisons but not at another).

Although Plaintiff has introduced evidence of differential treatment between different classes of prisoners within the Camden County Correctional Facility, and has shown that each county correctional facility has a different fee policy, the record is devoid of any support indicating that inmates across the state of New Jersey be housed under identical conditions and subject to identical policies.  Furthermore, State, Federal and County prisoners are not "similarly situated" for the purpose of this analysis.  Under the current policy, the Facility has a reasonable basis for collecting the maximum fee from County inmates in light of the fact that significant funding for the detention of these inmates is derived from funds of the County.  The differential treatment of inmates absent any discriminatory purpose fails to constitute a violation of the Equal Protection Clause.

### C.  Scope of the Enabling Resolution

The policy in the Camden County Correctional Facility is to charge all inmates and

17

pretrial detainees $35 upon admission to the facility.  The policy provides that all inmates regardless of their stay will be charged a minimum fee of $35 based on the average week-long stay.  This is reflected in the Warden's General Orders adopted December 26, 1995, revised June 7, 2002 and the Inmate Handbook.  (Pl.'s Ex.s B, C & D.)  Resolution #23 provides for a charge of $5 per day, but does not state that facilities may assess a minimum charge of $35.  The Resolution states in part:

> BE IT RESOLVED by the Camden County Board of Chosen Freeholders that the Warden of the Camden County Correctional Facility be and is hereby authorized to establish a Five ($5.00) Dollar per day userfee to be assessed against individuals incarcerated a the Camden County Correctional Facility, effective 12:01 A.M., January 1, 1996; and BE IT FURTHER RESOLVED that the fee to be assessed shall be deducted from individual inmate commissary accounts, on a daily basis, in accordance with a plan established by the Warden

Plaintiff was charged the full $35, but was in the facility for less than twelve hours.  Accordingly, Plaintiff argues that as implemented and applied to him, Camden County's user fee program goes beyond the scope of the enabling resolution.

The defendants did not respond to this claim in their motion for summary judgment; however, at oral argument, Defendant asserted that the broad language of the Resolution allows the Warden to adopt the policy and apply it in a manner that best serves the facility.  Because Resolution #23 authorizes a " Five ($5.00) Dollar per day userfee" and says nothing about up-front assessments, it was not necessary to amend the Resolution to reflect the decision to charge all inmates a flat fee upon entrance based on the average week-long stay.

The Court concludes that the up-front assessment does not exceed the enabling statute and is reasonably related to a legitimate government interest.  The policy of

collecting $35 at the outset of an inmate's incarceration is an administrative accommodation meant to facilitate the process of collecting the user fee. The policy appears to be based on reasonable calculations made in advance. As applied to this plaintiff who was incarcerated for less than one week, the Court recognizes that there appears to be a degree of unfairness, but the burden does not reach constitutional proportions. The policy is a non-punitive measure that is sufficiently related to legitimate administrative purpose.

## IV. Conclusion

The summary judgment record raises no genuine issues of material fact and the Court concludes, as a matter of law, that the User Fee constitutes a legal and reasonable application of the authority granted to the Board of Chosen Freeholders by the New Jersey Legislature. Furthermore, the user fee policy withstands constitutional scrutiny.

Accordingly,

For these reasons as well as those placed on the record during oral argument on October 15, 2009,

**IT IS ORDERED** on this 17th day of December, 2009 that Plaintiff's motion for summary judgment [8] is hereby DENIED and Defendants' cross motion for summary judgment [11] is GRANTED.


Dated: December 17, 2009

      /s/ Joseph H. Rodriguez
     HON. JOSEPH H. RODRIGUEZ,
     United States District Judge